# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1091V
UNPUBLISHED

| | |
|---|---|
| RAMONA JEAN FRY, Personal Representative of the Estate of HELEN J. BRIGGS,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: December 16, 2020<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Pneumococcal Conjugate Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Milton Clay Ragsdale, IV*, Ragsdale LLC, Birmingham, AL, for Petitioner.

*Matthew Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On July 26, 2018, Helen J. Briggs[2] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of a pneumococcal conjugate (Prevnar-13) vaccine administered to her on December 21, 2015. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] On April 30, 2020, Ramona Jean Fry was substituted as Petitioner following the death of Ms. Briggs on January 26, 2020, of causes unrelated to her vaccination. ECF No. 48.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the amount **$121,515.30**, **representing compensation of $120,000.00 for actual pain and suffering, and $1,515.30 for past unreimbursed expenses.**

I.   **Relevant Procedural History**

As noted above, the case was initiated in July 2018. The parties engaged in settlement discussions to resolve this matter informally, but reached an impasse and were unable to settle this case. ECF No. 50. On April 2, 2020, Respondent filed an expert report from Brian Feeley, MD, followed by a Rule 4(c) report on May 2, 2020, contesting Petitioner's entitlement to compensation and arguing that this case should be dismissed. ECF Nos. 45, 49. In an effort to expediently resolve this matter, a briefing schedule was established and a hearing on entitlement and damages scheduled for November 19, 2020. ECF No. 52.

In anticipation of the hearing, the parties filed multiple briefs and other evidence – including a report from Ms. Briggs's treating orthopedist, Christopher Piller, MD – on the issues of entitlement and damages. ECF Nos. 56, 58-60, 62-63, 75-78. In sum, Petitioner argued that she established entitlement to compensation for an on-Table SIRVA claim, or alternatively had established a cause-in-fact case, and requested $160,000.00 in past/actual pain and suffering plus $1,961.37 in unreimbursed expenses. ECF No. 77 at 14. Respondent maintained that Petitioner had failed to establish entitlement to compensation. ECF No. 59. In the event I found Petitioner entitled compensation, however, Respondent recommended that I award only $58,000.00 for past pain and suffering plus $1,130.29 for unreimbursed expenses. ECF No. 75 at 11.

The hearing proceeded by video conference on November 19, 2020. Minute Entry dated November 20, 2020.[4] Ms. Fry (Ms. Briggs's daughter and the new Petitioner in the matter), Deborah Porterfield (Ms. Briggs's other daughter), and Ruby Free (Ms. Briggs's sister) testified on behalf of Petitioner. Dr. Brian Feeley testified on behalf of Respondent. After hearing argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well, and this Decision memorializes those findings/determinations.

---

[4] The transcript of the November 19, 2020 Hearing in this case was not yet filed as of the date of this Decision, but is incorporated by reference herein. Milton Clay Ragsdale and Allison Riley appeared on behalf of Petitioner, and Matthew Murphy and Mallori Openchowski appeared on behalf of Respondent at the hearing.

2

**II.     Factual Findings and Ruling on Entitlement**

   **A.  Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a pneumococcal conjugate vaccine. 42 C.F.R. §

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

100.3(a)(XII)(A). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## B.  Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, including all witness testimony at the November 19, 2020 hearing, I find that a preponderance of the evidence establishes that Petitioner has satisfied the QAI requirements for a Table SIRVA. Respondent's Rule 4 Report, the parties' briefs, and the oral argument presented by counsel at the November 19, 2020 hearing provide detailed summaries of the medical records and affidavits filed in this case and are hereby incorporated by reference. ECF Nos. 49, 56, 59, 62, 75, 77.

### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent argues that Ms. Briggs "suffered from right shoulder pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration," pointing to medical record evidence purportedly establishing that she had reported right shoulder pain on December 3, 2015, in connection with a procedure she underwent at that time. ECF No. 59 at 9 (citing Ex. 7 at 7). Thus, Ms. Briggs's musculoskeletal exam from that day notes, without explanation, that she "[d]enies muscular pain *admits* to [right] shoulder and [right] knee pain." *Id* (emphasis added).

I do not, however, find that this single notation of right shoulder pain is evidence of a history of pain prior to Ms. Briggs's vaccination that would explain the symptoms, examination findings, and/or diagnostic studies occurring after her vaccination. The reference is simply too ambiguous, and is not corroborated by any subsequent medical record evidence. I therefore find Petitioner has met the first requirement under the QAIs for a Table SIRVA.

### 2. Onset of Pain

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)( XII)(A)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent does not appear to dispute that Petitioner has met this criteria, but I also find that it is preponderantly supported by the record. On December 22, 2015 (the day after her vaccination), Ms. Briggs returned to her doctor's office with complaints of arm pain and swelling after her vaccination the prior day. Ex. 1 at 22. She specifically reported that her pain the prior night was "off the pain scale." *Id.* On examination, Ms. Briggs's right upper arm injection site was found to be warm, and redness, swelling, and warmth was noted in an area above her injection site. *Id.* at 23. Ms. Briggs was also found to have decreased range of motion in her right shoulder. *Id.* All of the above establishes that the onset of Ms. Briggs's right shoulder pain was within 48 hours of vaccination.[6]

---

[6] At the November 19, 2020 hearing, Respondent's expert, Dr. Feeley, testified that the nature of Ms. Briggs's symptoms and her presentation was actually consistent with an initial acute reaction to her vaccination rather than SIRVA. However, this argument was not persuasively developed, and I do not find that her initial pain was not reflective of a Table SIRVA.

5

### 3. Scope of Pain and Limited ROM

Respondent has not contested that Petitioner meets this criterion. In addition, the medical records document symptoms only in Ms. Briggs's right shoulder following her pneumococcal vaccination. Ex. 1 at 19, 21-22; *see* Ex. 4 at 35-36, 43. I thus find that Petitioner has demonstrated by a preponderance of the evidence that her pain and reduced range of motion were limited to the shoulder in which the intramuscular pneumococcal conjugate vaccine was administered.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that "[n]o other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)." 42 C.F.R. § 100.3(c)(10)(iv).

Respondent argues that Ms. Briggs's osteoarthritis and degenerative changes on MRI are evidence of an alternate explanation for her "presentation." ECF No. 59 at 9 (citing ex. 1 at 21-22, ex. 4 at 35). Additionally, Dr. Feeley opined that "the most likely diagnosis for Ms. Briggs's shoulder condition [was] arthritis in her right shoulder." Ex. A at 4. In so proposing, he maintained that in addition to her sex and age, Ms. Briggs's medical records, including her MRI, confirm the diagnosis of shoulder arthritis. *Id.*

The MRI of Ms. Briggs's right shoulder demonstrated

> 1. Severe glenohumeral osteoarthritis with degenerative inferior and anterior dural tears. Glenoid bone stock appears mildly decreased. 2. Infraspinatus tendinopathy noted with high-grade articular sided tear of the mid to anterior infraspinatus. Small portion of articular sided infraspinatus fibers are intact. 3. Severe subacromial subdeltoid bursitis. 4. Intra-articular long head biceps tendinopathy.

Ex. 4 at 35, 142. As I have noted in similar cases, however, "in the vast majority of SIRVA claims where petitioners undergo an MRI of the affected shoulder, *there is evidence of degenerative symptoms of the shoulder*, especially in certain specific age groups of the population." *Werning v. Sec'y of Health & Human Servs.*, No.18-0267V, 2020 WL 5051154, at *11 (Fed. Cl. Spec. Mstr. July 27, 2020) (emphasis added). Ms. Briggs was 82 years-old at the time of her vaccination, and it would not be unusual for such a person

to display on imaging or X-ray evidence of osteoarthirits[7] and other degenerative findings. Accordingly, these findings do not rise to the level of a disqualifying fact for the purposes of establishing a Table SIRVA case.[8]

In addition, Ms. Briggs's MRI finding of severe subacromial subdeltoid bursitis is consistent with SIRVA as described in the medical literature and by Respondent's expert, Dr. Feeley, and constitutes a medical condition somewhat distinct from osteoarthritis. Ex. A at 4 (explaining that "[t]he majority of cases of SIRVA are due to subacromial bursitis, which is in a distinct anatomic area compared to the shoulder joint itself"). And Ms. Briggs's treating orthopedist, Dr. Piller, opined after reviewing her history of right shoulder pain and MRI report that "[i]n summary Ms. Briggs suffered from refractory pain and limited range of motion from a shoulder injury resulting from vaccine administration (SIRVA)." Ex. 19. Accordingly, there is also treater support for a finding favoring Petitioner on this QAI requirement.

### C. Other Requirements for Entitlement

As stated in the previous section, I find that the onset of Ms. Briggs's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that the first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XII)(A).) (listing a time frame of 48 hours for a Table SIRVA following receipt of the pneumococcal conjugate vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation.

---

[7] "Osteoarthritis is the most common form of arthritis, affecting millions of people worldwide." https://www.mayoclinic.org/diseases-conditions/osteoarthritis/symptoms-causes/syc-20351925 (last visited December 16, 2020).

[8] Indeed, I note that (as Petitioner points out in her briefing), scientific and medical literature addressing SIRVA recognizes that age-related changes are unlikely to be the cause of acute pain after vaccination, and that these conditions can be "asymptomatic until provoked by trauma or other events." ECF No. 62 at 3-4.

> Pet. Ex. 22 at 5 [Saleh, et al.] ("Additionally, as 2 out of 3 patients were elderly, age-related degenerative changes could have attributed to the pain and limitation of motion. However, given the acute onset of these changes and timely association with vaccination, age-related changes were unlikely to be the cause even with radiologic evidence of mild degenerative changes.") *and* Pet. Ex. 21 at 3 [Atanasoff, et al.] ("In general, chronic shoulder pain with or without reduced shoulder joint function can be caused by a number of common conditions including impingement syndrome, rotator cuff tear, biceps tendonitis, osteoarthritis and adhesive capsulitis. In many cases, these conditions may cause no symptoms until provoked by trauma or other events.").

ECF No. 62 at Note 2. Accordingly, I find Ms. Briggs's arthritis or osteoarthritis was incidental or coincidental to her SIRVA.

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, however, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements. I therefore find that Petitioner is entitled to compensation in this case.

### III.   Damages

#### A.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages (including out-of-pocket losses as well as pain and suffering) in SPU cases. I fully adopt and hereby incorporate my prior discussion in Sections V and VI of *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020), Sections IV and V of *Rafferty v. Sec'y of Health & Human Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020), as well as Sections VI(A) and VI(B) of *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

#### B.  Appropriate Compensation for Unreimbursed Expenses

As stated in my oral ruling on November 19, 2020, I find that $1,515.30 represents an appropriate award of unreimbursed expenses in this case. Included in this sum are all unreimbursed expenses for Ms. Briggs's past medical care, reflecting doctor visits, $435.83 (Ex. 29 at 1) and prescription medication through August 14, 2018, $667.14 (Ex. 29 at 2).

I make two adjustments, however, to the total sum requested by Petitioner. First, I find that certain medical costs incurred after August 14, 2018 cannot wholly be attributed to Ms. Briggs's SIRVA. In particular, her falling accident reported on August 22, 2018 (Ex. 11 at 54-55) more likely than not contributed to her need for the prescription medication for which Petitioner seeks reimbursement, but was not wholly a SIRVA consequence. I

8

thus award Petitioner 50% of her requested unreimbursed expense for prescription medication incurred after August 22, 2018, or $331.00.[9] Ex. 29 at 2-3.

Second, Petitioner requested $197.03 for the mileage incurred in connection with Ms. Briggs's medical treatment. Ex. 30. Petitioner testified that Ms. Briggs stopped driving at the end of 2016 or the beginning of 2017, and thus required the assistance of family members to take her to medical appointments. However, "[a]ssistance provided an injured party by her own family members is not compensable under the Vaccine Act." *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2016 WL 3577540, at *5 (Fed. Cl. May 12, 2016) (citing *McCollum v. Sec'y of Health & Human Servs.*, No. 94–136V, 2009 WL 2524190, at *4 (Fed. Cl. Spec. Mstr. July 27, 2009*), mot. for review den'd*, 91 Fed. Cl. 86, 92 (2010), *aff'd*, 412 Fed. Appx. 307 (Fed. Cir. 2011)). In light of the above, I will award Petitioner mileage expenses incurred directly by Ms. Briggs through 2016, or $81.33, but similar expenses occurred once she ceased driving (which the record suggests began March 9, 2017) are not awarded. Ex. 30 at 1-4.

Accordingly, the total amount of unreimbursed expenses awarded to Petitioner is $1,515.30.  This amount represents the total of $435.83 in costs for doctor visits, $667.14 in costs for prescription medication through August 14, 2018, $331.00 in costs incurred after August 22, 2018 for prescription medication, and $81.33 for mileage expenses incurred by Ms. Briggs through 2016.

### C.  Appropriate Compensation for Pain and Suffering

The Vaccine Act caps recoverable pain and suffering (actual as well as projected) at $250,000. Section 15(a)(4). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (citing *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, the testimony of all witnesses and the oral argument of counsel at the November 19, 2020 hearing, plus all filings in the case containing fact/record

---

[9] Petitioner requested $661.37 in past medical care for prescription costs after August 22, 2018. 50% of this amount, rounded up to the nearest dollar is $331.00. Ex. 29 at 2-3. Petitioner requested compensation for no doctor visits after June 20, 2018. Ex. 29 at 1.

summaries. ECF Nos. 49, 56, 59, 62, 75, 77. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Respondent asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and has noted that they tend to be lower in magnitude). However, I find that awards issued *within* the Program (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other *reasoned* decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.

Pursuant to my oral ruling on November 19, 2020 (which is fully adopted herein), **I find that $120,000.00 represents a fair and appropriate amount of compensation for Ms. Briggs's pain and suffering.**

Ms. Briggs's pain was severe immediately, prompting her to seek treatment within a day of her December 21, 2015 vaccination. Ex. 1 at 22-23. Thereafter, Ms. Briggs underwent significant treatment for her injury for approximately eleven months, to include: physical therapy,[10] two steroid injections,[11] and an MRI scan.[12] The medical records further establish that she suffered a fairly severe injury – given the "severity of her pain and limited range of motion" – that would likely only "be significantly improved with a total shoulder arthroplasty" in the opinion of her treating orthopedist." Ex. 19; *see* Ex. 4 at 35.

Unfortunately, due to Ms. Briggs's advanced age and numerous co-morbidities, she was not able to undergo the shoulder surgery that "would likely have offered her substantial relief." Ex. 19, *see* Ex. 4 at 35-36. After failing conservative treatment, including physical therapy and steroid injections, Ms. Briggs's SIRVA could only be treated with opioid pain relievers (which caused her constipation and other side-effects) and otherwise was forced to live with her injury. *See* Ex. 19. Thus, even though she did not undergo significant treatment for her SIRVA after 2016, she more likely than not

---

[10] Ms. Briggs engaged approximately eight physical therapy sessions, but at her discharge was still experiencing shoulder pain. (Ex. 5 at 2).

[11] Ms. Briggs received steroid injections on the following dates: July 13, 2016 (Ex. 4 at 35) and November 7, 2016 (Ex. 4 at 36).

[12] Ms. Briggs's MRI scan occurred on July 8, 2016. Ex. 4 at 142.

continued to experience pain and suffering as a result of her SIRVA until her death on January 26, 2020.

At the same time, however, Ms. Briggs's SIRVA was not the only source of pain and suffering she experienced in her final years of life, both before and after her vaccination, and my award reflects this finding. Ms. Briggs was elderly and suffered significant co-morbidities, including but not limited to: congestive heart failure, chronic obstructive pulmonary disease, arthritis of multiple joints, several debilitating falls, and kidney disease. The medical records, and Dr. Feeley's testimony, support the conclusion that Ms. Briggs more likely than not experienced significant pain and suffering as a result of these co-morbidities. As a result, the totality of Ms. Briggs's suffering after her SIRVA cannot wholly be attributed to her vaccine injury.

In making my determination, I have fully considered the affidavit and video testimony of Ms. Briggs, and the testimony of her daughters and sister, which detail the limitations in Ms. Briggs's overall enjoyment of life, hobbies, and exercise of daily functions attributable to her shoulder injury. This evidence unquestionably supports *some* pain and suffering award in this case, if not the amount Petitioner has requested.

Petitioner sought a pain and suffering award of $160,000.00, citing a prior damages determination to support this amount. *Reed v. Sec'y of Health & Human Servs*., No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering). However, the petitioner in *Reed* did not suffer the significant, distinguishable co-morbidities experienced by Ms. Briggs. Additionally, the *Reed* petitioner's physical ability to care for a young child with an ADHD autism spectrum disorder was negatively impacted by her injury – a factor not present in the instant case. *Id.* at *11, 16. I thus find the amount awarded in *Reed* to exceed what is appropriate in this case, given such dissimilarities.

Respondent for his part appropriately cites the *Murray* case where a pain and suffering award was reduced due to the petitioner's co-morbidities. *Murray v. Sec'y of Health & Human Servs.,* No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $65,000.00 for pain and suffering). Respondent also cites the *Rayborn* case where the petitioner had a medical history that did not appear contributory to her claim. *Rayborn v. Sec'y of Health & Human Servs.,* No. 18-226V, 2020 WL 5522948, *2 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for pain and suffering). However, although I find these to be reasonable comparables, Respondent's proposed award of $58,000.00 is too low given the facts of this case. Rather, this case is more aligned with a different set of cases. *See generally Dawson-Savard v. Sec'y of Health & Human Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (awarding $130,000.00 for actual pain and suffering); *Binette v. Sec'y of Health & Human*

*Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. March, 20, 2019) (awarding $130,000.00 for actual pain and suffering, and $57,000.00 for future pain and suffering[13]). Like Ms. Briggs, the petitioners in *Dawson-Savard* and *Binette* also did not, or were also unable to, undergo surgery, and suffered from their injuries for a lengthy time period with permanent impairment. These two cases thus provide persuasive guidelines for the present award (although I have reduced the sum here, to reflect my prior finding that Ms. Briggs's non-vaccine related comorbidities independently contributed to her overall suffering).

### IV.   Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $<u>121,515.30</u>, representing compensation of $120,000.00 for actual pain and suffering, plus $1,515.30 for in past unreimbursed expenses.**

This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[13] Unlike the present case, the *Binette* petitioner received a future pain and suffering award because she was young, with a future life expectancy of 57 years. *Binette,* 2019 WL 1552620, *15.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.